# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| LEE ANN LOVE,<br><br>        Plaintiff,<br><br>v.<br><br>JOHNNY OLIVER WISEMAN, et al.,<br><br>        Defendants. | Case No. 19-cv-01688-BLF<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S POST-TRIAL RULINGS AND JUDGMENT**<br><br>[Re: ECF 19, 24] |

Eight years ago, Appellant Lee Ann Love entered into an agreement with her then in-laws, Johnny and Vicki Wiseman: Love would invest in their framing business, and the Wisemans would train and employ her. The long-term plan was for the Wisemans to sell Love their property and part of the business. Once Love separated from her then-husband (the Wisemans' son), however, the agreement fell apart, and the Wisemans filed for bankruptcy. To clarify and protect her interests resulting from her agreement with the Wisemans, Love filed an adversary proceeding against the Wisemans, the Wiseman Family Trust 2002 ("Family Trust"), bankruptcy trustee Marc Del Piero (the "Trustee"), and other entities in the Bankruptcy Court. In 2014 and 2015, the Bankruptcy Court issued a series of orders in which Love's claims against the Trustee were disposed of. Love appealed and this Court affirmed those interlocutory orders in 2016. Love proceeded to trial on her claims against the Wisemans and the Bankruptcy Court (1) issued an Amended Order Following Trial, (2) entered Judgment, and (3) denied Love's (second) Motion for Reconsideration. Love now appeals the Bankruptcy Court's orders and judgment to this Court.

The Court finds this matter suitable for submission without oral argument pursuant to Civ. L.R. 7-1(b). For the reasons stated below, the Court AFFIRMS Bankruptcy Court's rulings and Judgment.

## I. BACKGROUND

Love alleges that in March 2012, she entered into a partnership agreement with her then in-laws, Johnny Oliver Wiseman and Vicki Lynn Wiseman (the "Wisemans") and Javea Corporation ("Javea"), a California corporation created by the Wisemans. *See* Second Amended Adversary Proceeding Complaint ("SAC") ¶¶ 5, 8, ECF 12-1 at 6-22 (Exh. B).

The written record of Love's agreement with the Wisemans is limited to an "Investment Transaction" document signed by Johnny Wiseman, which states, verbatim:

> Lee Love has made a total investment in JAVEA CORP. of $75000.00 (seventy-five) in anticipation of total ownership of JAVEA CORP. at a point in the future whenever she determines appropriate based solely on her financial situation. This represents a total of 33% of the value of JAVEA CORP. this date March 1 2012. that amount being $225,000.00.

Trial Exh. 1, ECF 12-1 at 109.

According to Love, she paid the Wisemans $75,000, and in return, they were to sell Javea and its framing business (minus one part of the business, Max Wholesalers) to her, train and employ her in the framing business, and issue her 33% of Javea's stock. *See* SAC ¶ 8. Love alleges that a few months later in May 2012, Love, the Wisemans, Javea, and the Family Trust revised the partnership agreement. *See id.* ¶ 9. Under the revised agreement, Love paid the Wisemans an additional $25,000 (for a total of $100,000), and in return, they were to sell a portion of Javea and its framing business (minus Max Wholesalers) to her, sell the real property located at 663 Lighthouse Ave., Monterey, CA ("Monterey Property") to her, train and employ her in the framing business, and issue her 25% of Javea's stock. *See id.* The Monterey Property's title was held by the Wiseman's Family Trust. Excerpts of Record ("ER") at 424-25, ECF 22-3.

Love alleges that she paid the $100,000 to the Wisemans and her training and employment began. *See* SAC ¶ 9. Around Aug. 1, 2012, however, the Wisemans fired Love and stopped her training, and the Family Trust, which owned the Monterey Property, tried to sell the property to another entity without Love's consent. *See id.* In December 2012, Love sued the Wisemans, the Family Trust, and Javea in Monterey County Superior Court, and recorded a lis pendens on the Monterey Property. *See id.* ¶¶ 12, 22. The Wisemans filed for Chapter 7 bankruptcy, and so the state court case was stayed as to them and the Family Trust. *See id.* ¶¶ 9, 12. Love obtained a

1 judgment of $134,359.13 against Javea. *See id.* ¶ 13; *see also* ECF 12-1 at 156-57.

In May 2014, Love filed an adversary proceeding complaint in Bankruptcy Court and the SAC (the current iteration of Love's adversary proceeding complaint) names the Wisemans, the Family Trust, Javea, the Trustee, and other entities as defendants. *See* SAC at 1-2. In the adversary proceedings, Love asserted claims against the Wisemans pursuant to 11 U.S.C. Section 523(a), seeking that her claim against them not be discharged in the bankruptcy case. *See id.* ¶¶ 23-40. Love also sought a determination of the ownership of the Monterey Property and of the validity of liens. *See id.* ¶¶ 41-46, 53-56.

Shortly after Love filed the SAC, the parties agreed, and the Bankruptcy Court subsequently ordered, that the Monterey Property be sold for $800,000 free and clear of liens and that the net sales proceeds be held by the Trustee pending resolution of the litigation with Love (and Radwan, a third party). *See* Order Authorizing and Approving Sale of Real Property of the Estate Free and Clear of Liens and Encumbrances ("Sale Order"), ECF 12-1 at 1-5 (Exh. A). At the time, Love's lien attached to the net sales proceeds. *See id.* ¶ 14.

The Trustee filed a motion to dismiss the claims asserted against him in Love's adversary action as to: Count 4 (determination of ownership of the Monterey Property); Count 5 (a determination of the liens in the Monterey Property); Count 8 (injunctive relief seeking delay in distribution of sale proceeds until ownership and liens had been determined); and part of Count 9 (declaratory relief as to the duties and limitation of the Trustee regarding the Monterey Property and its sale). *See* ER at 238-44, ECF 22-2. On April 2, 2015, the Bankruptcy Court entered a Memorandum Decision re: Motion to Dismiss Complaint (incorporated into the April 21, 2015 Order Granting Trustee's Motion to Dismiss Plaintiff's Second Amended Complaint as to the Trustee with Prejudice), in which the Bankruptcy Court dismissed Love's claims against the Trustee. ER at 136-140 ("Dismissal Order"); *see also* ER at 116-18, ECF 22-1.

After the sale, the Trustee filed a motion to determine the secured status of Love's claim on the Monterey Property. ER at 151-59, ECF 22-1. The Trustee sought to have the Bankruptcy Court determine the validity of Love's lis pendens—if the lis pendens were invalid, then Love's state court judgment would not be a lien on the Monterey Property and would be a general unsecured claim.

3

*See id.* at 151-52. The Trustee argued that the lis pendens was invalid because it had not been properly served before recordation as required by Cal. Civ. Proc. Code § 405.22, and service of the lis pendens never was recorded as required by Cal. Civ. Proc. Code § 405.23. *See id.* at 155-58. Love argued that she had properly served the lis pendens. *See* ER at 219-23, ECF 22-2.

On February 10, 2015, the Bankruptcy Court determined that the Trustee's motion was an objection to Love's proof of claim and "a proceeding to determine the validity, priority or extent of a lien or other interest in the property." Order re: Motion to determine Secured Status and Taking Matters off Calendar at 2, ECF 12-1 at 23-26 (Exh. C). As such, the Bankruptcy Court found that the Trustee's motion to determine Love's secured status was to be decided in the context of an adversary proceeding. *See id.* at 3. Accordingly, the Bankruptcy Court consolidated Trustee's motion in the adversary proceedings. *Id.*

The Bankruptcy Court issued a memorandum decision on Apr. 2, 2015. *See* Memorandum Decision re: Motion to Determine Secured Status of Love's Claim ("Secured Status Order"), ECF 12-1 at 27-33 (Exh. D). The Bankruptcy Court held that even though the lis pendens was mooted by the sale of the Monterey Property, the validity of the lis pendens was relevant to determining whether Love's claim was secured. *See id.* at 3. This was because the only basis for Love's claim to an interest in the Monterey Property was her claim that the revised partnership agreement provided for the sale of that property to her. *See id.* If the lis pendens had been validly recorded, it would have given notice to the world that Love asserted an interest in the Monterey Property, and a judgment in Love's favor would make her claim relate back to the date the lis pendens was filed and make her claim superior to the Trustee's. *See id.* But because the lis pendens was not properly served and service was not recorded, the lis pendens was void and invalid, and Love's interest in the Monterey Property could not relate back to the filing of the lis pendens. *See id.* The Bankruptcy Court issued a final order holding that Love's notice of lis pendens was void and invalid as a matter of law and that she did not have a secured claim in the bankruptcy case. *See* Final Order Granting Trustee's Motion to Determine Secured Status of Love's Claim, ECF 12-1 at 37-39 (Exh. F).

Love moved for reconsideration of both the order deeming her claim unsecured and the order granting the Trustee's motion to dismiss. *See* ER at 119-23, ECF 22-1. She submitted another

4

declaration from Kinney, her former attorney, as newly discovered evidence. *See* ER at 124-35, ECF 22-1. The declaration was dated Apr. 15, 2015—thirteen days after the Bankruptcy Court issued its two memorandum decisions—and stated that the lis pendens had been recorded on December 13, 2012. *See id.* ¶ 3. It included a proof of service showing that the lis pendens had been served on Apr. 15, 2015, on the Trustee, his counsel, and the various defendants named in Love's SAC. *See id.* ¶ 7, *see also* ER at 133-34, ECF 22-1.

On June 5, 2015, while the motion for reconsideration was under submission, Love filed a request for judicial notice of an amended notice of lis pendens. *See* ER at 86-96, ECF 22-1. The amended notice of lis pendens and proof of service were both recorded by the Monterey County Recorder on June 5, 2015. *See* ER at 89-96, ECF 22-1.

The Bankruptcy Court denied Love's motion for reconsideration. Order Denying Motion for Reconsideration ("First Recons. Order"), ECF 12-1 at 40-45 (Exh. G). The Bankruptcy Court held that Kinney's declaration was not newly discovered evidence that would have made reconsideration appropriate; rather, it was newly created evidence that did not exist at the time the Bankruptcy Court heard the Trustee's motions. *See id.* at 5. Furthermore, the key issue under Cal. Civ. Proc. Code § 405.23 was whether proof of service of the lis pendens was recorded when the lis pendens was originally filed, not whether the parties had later been served, and so the Kinney Declaration did not fix the defects invalidating the lis pendens. *See id.*

At that point, all of Love's claims against the Trustee were dismissed but her § 523 non-dischargeability claims against the Wisemans had not yet been adjudicated and thus, final judgment was not entered. Nevertheless, Love appealed the three interlocutory orders (Dismissal Order, Secured Status Order, and First Reconsideration Order) to this Court in August 2015. *See Love v. Wiseman et al.*, Case No. 5:15-cv-03884-BLF.

In her first appeal Love raised eighteen (18) issues to be determined, many of which overlapped, most of them were not discussed in the argument portion of her brief, and entirely new issues were raised in her reply brief. *See* Order Affirming Bankruptcy Court's Rulings on (1) Motion to Determine Secured Status of Claims; (2) Motion to Dismiss; and (3) Motion for Reconsideration ("Prior Order") at 6-7, ER at 65-79, ECF 22-1. The Court conducted a *de novo*

5

review of the Bankruptcy Court's findings, addressed the issues raised in Love's briefs and on August 26, 2016, affirmed all three orders. *See id.* Shortly thereafter, Love filed a notice of appeal with the United States Court of Appeals for the Ninth Circuit. The Ninth Circuit dismissed Love's appeal because it found that it lacked jurisdiction to review interlocutory orders, which included this Court's Prior Order. *See* Ninth Circuit Dismissal, ER at 58-64, ECF 22-1.

Love proceeded to trial on her unresolved claims against the Wisemans and the Family Trust (*i.e.*, that the debt owed to Love by the Wisemans is nondischargeable in bankruptcy). *See* SAC, Counts 1-3, 9. At trial, Love and her former attorney, Charles Kinney, testified. *See* Trial Tr., ECF 25-1 (Exh. I). The Bankruptcy Court found the testimony "not particularly helpful" because "Love presented almost no testimony to establish the nature of the representations the Wisemans made to her to induce her to transfer money to them" and instead, "used terms associated with many different forms of business[.]" Amended Order Following Trial ("Post-Trial Order") at 3, ECF 12-1 at 175-94 (Exh. K). Love hired Kinney after she was fired by the Wisemans to recover her money and to file suit in state court. *See* Trial Tr. 11:24-12:4. Kinney's testimony mainly covered introduction of exhibits and documents and his conclusions about the meaning of certain statements or markings on the documents. *See* Trial Tr. 12-45; Trial Exhs., ECF 12-1 at 104-74 (Exh. J).

As for Love's claims against the Wisemans, the Bankruptcy Court issued an Amended Order Following Trial on February 5, 2019. *See* Post-Trial Order. The Bankruptcy Court found that Love was in partnership (or joint venture) with the Wisemans, although "the financial arrangements were not the product of an arms-length transaction, but instead the result of a family-business relationship that deteriorated[.]" *Id*. at 3, 11-12. The Bankruptcy Court found in favor of Love that the Wisemans' debt to Love is non-dischargeable under § 523(a)(4) and § 523 (a)(6) (claim for relief nos. 2 and 3) because the debt was the result of defalcation and embezzlement. *Id.* at 10-17. The Bankruptcy Court found, however, that Love failed to establish a claim for non-dischargeability under § 523(a)(2)(A) (claim for relief no. 1) because the evidence did not support that the Wisemans knew their representations to Love were false when they made them. *Id.* at 190. Instead, the evidence appeared to show that "the parties desired to be in business together until the point at which Love separated from her husband (the Wisemans' son)." *Id.* at 17-18. On February 8, 2019, the

Bankruptcy Court entered its final Judgment. Judgment, ECF 12-1 at 195-97 (Exh. L).

The Bankruptcy Court relied on its previous orders (affirmed by this Court) and entered judgment on the following issues: (1) the Monterey Property is property of the bankruptcy estate (claim for relief no. 4); (2) Love does not have a secured claim (claim for relief no. 5); (3) claim for injunctive relief was dismissed with prejudice and is moot now that the ownership or the Monterey Property has been established (claim for relief no. 8); and (4) Love and the Wisemans were in a partnership or joint venture and Love has a general unsecured claim in the amount of $134,359.13 (claim for relief no. 9). *See* Judgment.

Love filed a motion for reconsideration, which the Bankruptcy Court denied. ECF 12-1 at 199-205 ("Second Recons. Order"). The Bankruptcy Court found that (1) the Bankruptcy Court gave full faith and credit to the state court judgment and (2) Kinney's testimony at trial was not a basis for reconsideration. *Id.* at 5, 6. As for Love's remaining arguments, the Bankruptcy Court concluded that it could not reconsider its previous orders (*i.e.*, Dismissal Order, Secured Status Order, and First Reconsideration Order) because they had been affirmed by this Court. *Id.* at 5, 6-7.

Before the Court is Love's second appeal of the Bankruptcy Court's orders. In her Opening brief, Love states that she is appealing all adverse decisions entered against her. Opening Br. at 2, ECF 19. The Court construes Love's request to mean that she is appealing (1) the Post-Trial Order (to the extent that the findings were not in Love's favor); (2) Judgment, and (3) Second Reconsideration Order. To the extent that Love is rehashing the issues this Court affirmed in its Prior Order, the Court construes Love's arguments as a request for reconsideration. The Court notes that the precise nature of the alleged errors for which Love seeks review is difficult to discern due to her overlapping and imprecise arguments. Regardless, the Court endeavors to identify and address Love's assertions below.

## II. LEGAL STANDARD

A district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous,

and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." *Id.* This Court therefore reviews the bankruptcy court's findings of fact for clear error, and it reviews the Bankruptcy Court's conclusions of law de novo. *See In re Mortg. Store, Inc.*, 773 F.3d 990, 994 (9th Cir. 2014) (citing *In re Lazar*, 83 F.3d 306, 308 (9th Cir. 1996)). In reviewing an order or judgment of the Bankruptcy Court, the Court has the "power to consider any issue presented by the record even if the issue was not presented to the bankruptcy court." *In re Pizza of Haw., Inc.*, 761 F.2d 1374, 1379 (9th Cir. 1985). However, "[i]f the bankruptcy court's factual findings are silent or ambiguous as to a material factual question, the district court must remand the case to the bankruptcy court for the necessary factual determination; the district court may not make its own independent factual findings." *In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802, 804 (9th Cir. 1991) (citing *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir. 1987)).

### III. DISCUSSION

The parties present somewhat disparate but related views on the issues to be determined. Love identifies five issues, which relate to her claim of partial ownership of the Monterey Property and the distribution of Monterey Property's sale proceeds. *See* Opening Br. at 8-9. She also makes many additional arguments throughout her Opening and Reply briefs. *See generally*, Opening Br., Reply, ECF 23. The Trustee, on the other hand, is of the opinion that four issues are to be decided: (1) whether the Bankruptcy Court correctly declined to reconsider issues affirmed by this Court's Prior Order under the "rule of mandate" doctrine; (2) whether this Court is bound by the "rule of the case" doctrine to uphold its Prior Order; (3) whether the Bankruptcy Court correctly determined that the Trustee's hypothetical bona fide creditor/purchaser status trumped Love's unrecorded partnership interests in the Monterey Property; and (4) whether the Bankruptcy Court correctly determined that the Monterey Property was property of the bankruptcy estate. Answering Br. at 2.

#### A. This Court's Prior Order

In this appeal, Love raises many issues that were decided in the Bankruptcy Court's interlocutory orders and affirmed by this Court in its Prior Order. For example, Love argues that the Bankruptcy Court failed to give full faith and credit to the state court orders, that Love partially owned the Monterey Property, and that the Trustee was "on notice" of Love's lis pendens. *See*

Opening Br. at 23, 12. Love argues that "[t]his appeal differs from Love's 2015 appeal to the District Court because the Bankruptcy Court held a bench trial in June 2018 at which Love and her witness appeared and presented oral and written evidence[.]" Opening Br. at 2. The Trustee urges that all issues affirmed in this Court's Prior Order are "law of the case" and should not be disturbed. Answering Br. at 21-24.

"The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) (internal citation and quotation marks omitted). The doctrine "may describe an appellate court's decision not to depart from a ruling that it made in a prior appeal in the same case." *Id.* However, while the law-of-the-case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided," it does not limit the Court's power. *Id.* (citing *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)). Thus, this Court is free to reexamine its own prior orders. *See Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999) ("[T]he law of the case doctrine does not deprive an appellate court of discretion to reconsider its own prior rulings, even when the ruling constituted a final decision in a previous appeal."). That said, courts generally decline to reconsider previously decided questions unless "there has been an intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995).

In this appeal, Love provides no valid reason for the Court to disturb the law of the case. Instead, Love simply seeks to re-litigate issues that have been decided. Since the Court issued its Prior Order, the Bankruptcy Court held a bench trial, in which only Love and her prior attorney testified. *See* Trial Tr., ECF 25-1. The Court has independently reviewed the trial testimony and the trial exhibits submitted therein and concludes that the trial materials do not provide any new evidence or authority to justify a reconsideration of this Court's Prior Order. Love's testimony was a reiteration of the facts in the SAC and the procedural history of the adversary hearing. *See e.g.*, Trial Tr. 9:23-11-8. Love's former attorney's testimony mainly covered introduction of exhibits and documents and his conclusions about the meaning of certain statements or markings on the

9

documents. *See* Trial Trans. 13-52; Trial Exhs. The Trial Exhibits are documents submitted in the adversary proceedings and the state court litigation. *See generally*, Trial Exhs.

Thus, the Court is not persuaded that there is any justification for reopening the issues it affirmed in the Prior Order and disturbing the law of the case. That said, to the extent that Love makes any new arguments, the Court will make every effort to address them below.

### B. The Post-Trial Order

The Bankruptcy Court issued an order following a bench trial, in which it found largely in Love's favor and against the Wisemans. *See* Post-Trial Order. Love argues that the Bankruptcy Court failed to "to find for Love on the 11 U.S.C. Sec. 523(a)(2) claim [based on uncontested trial testimony]." Opening Br. at 23. According to Love, the Bankruptcy Court "was ***inconsistent*** in its findings as to 11 U.S.C. Sec. 523(a)(4) [10:1-11] when compared to its findings as to 11 U.S.C. Sec. 523(a)(2) [17:11-18:20], even though both claims needed proof of the same type of actual fraud and/or false representations by the debtors (i.e. by these co-partners)." The Wisemans have not filed an opposition.

The Bankruptcy Court did not err in concluding that Love failed to articulate well-pled allegations that Wiseman committed fraud before or at the time the agreement was made. To prevail on a claim under § 523(a)(2)(A), a creditor must demonstrate five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *In re Yong Li*, No. ADV 11-02107-TD, 2012 WL 5419068, at *3 (B.A.P. 9th Cir. Nov. 7, 2012).

Other than Love's after-the-fact subjective belief that the Wisemans made representations that Love would become a partner in the framing business, with the intent and purpose of deceiving her, nothing in the record supports such a conclusion. *See* Opening Br. at 6. Love's sole trial witness, her former attorney, did not get involved with the case until after Love was fired by the Wisemans and therefore possessed no knowledge as to the Wisemans' intent at the time Love entered into the agreement with them. *See* Trial Tr.,11:24-12:4. As the Bankruptcy Court

10

concluded, the Wisemans failed to fulfill their obligations to Love under the agreement, which damaged Love. Post-Trial Order at 18. However, there is no evidence that the Wisemans intended to do so at the time they entered into the agreement – which is an element of a claim under § 523(a)(2)(A). As the Bankruptcy Court explained:

> Love presented no evidence to show the specific representations that were made to her to induce her to advance money to the Wisemans. In the simplest terms, it appears the parties desired to be in business together until the point at which Love separated from her husband (the Wisemans' son).

Post-Trial Order at 17-18. This Court reviews the Bankruptcy Court's finding of facts for "clear error" – which is not present here. *See* Fed. R. Bankr. P. 8013. Moreover, Contrary to Love's assertion, the Bankruptcy Court's finding was not inconsistent with its findings as to § 523(a)(4) and § 523(a)(6). Neither of those claims require "knowledge of the falsity or deceptiveness of the statement or conduct."[1]

\*\*\*

For the foregoing reasons, the Court affirms Bankruptcy Court's Post-Trial Order.

### C. Final Judgment

Love's challenges to Bankruptcy Court's final Judgment are, as far as the Court can discern, at the heart of Love's current appeal. Love claims that she has a 1/4 ownership interest in the Monterey Property and that the Trustee should have distributed funds to her after the property was sold. *See e.g.*, Opening Br. at 20-21, 31. To support her claim, Love presents several intertwined arguments, which the Court addresses below.

#### 1. Love's Partial Ownership Claim (Issues 1 and 2)

The Bankruptcy Court found that the Monterey Property was the property of the bankruptcy estate. Judgment at 2. Love claims that "[the judgment [AP #174] ignored: (1) Love's status as a 1/4 owner of partnership property which was not in the estate and/or as a bona-fide purchaser; and (2) the Trustee's failure to distribute the net sales proceeds to Love after Radwan waived his rights

---

[1] Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Under § 523(a)(6), a debtor cannot receive a discharge of a debt "for willful and malicious injury by the debtor to another." 11 U.S.C. § 523(a)(6).

11

in 2015 and/or after his default was taken in 2018." Opening Br. at 13; *see also id.* at 29 ("In AP #174, the court stated that Love has a 'general unsecured claim' [e.g. 2:15], but never explained how Love was not a 1/4 owner of partnership property or a *bona-fide* purchaser. The court stated Love 'does not have a secured claim' [e.g. 3: 1-2] without mention of partnership assets that were never in the estate.").

First, the evidence does not support Love's contention that the Monterey Property was "partnership property." There is no dispute that the Wisemans' Family Trust held the title of Monterey Property at all relevant times. *See* ER at 424-25; Opening Br. at 25 ("[It doesn't matter that the Trust was still on title to the general partnership's Monterey property."). Under California law, interest in real property must be recorded to be valid against a subsequent purchaser. *See* Cal. Civ. Code § 1214. There is no evidence in the record (and Love does not claim otherwise) that the partnership's alleged interest in the property was ever recorded. Thus, the Family Trust was presumed to hold the title for the Monterey Property when the bankruptcy proceedings commenced – making it the property of the bankruptcy estate. *See* 11 U.S.C. § 541; Cal. Evid. Code § 662; *see also See* Judgment at 2 (Count 4).

Moreover, as the Trustee notes, the Bankruptcy Court carefully considered Love's ownership claims and rejected them. *See* Answering Br. at 10-12. The Bankruptcy Court explained:

> Plaintiff points out, correctly, that the Lis Pendens is constructive notice of her claim to the real property and is not a claim or a lien, and that the Lis Pendens became moot once the property was sold. But under the facts of this case, the determination of whether Plaintiff's claim is secured initially hinges upon the validity of the Lis Pendens. ***This is because the basis for Plaintiff's claim that she has an ownership or other interest in the property is her claim that the May 10, 2012 partnership agreement provided for the sale of the real property to Plaintiff***. The Lis Pendens, had it been validly recorded, would have provided notice to the world that Plaintiff asserted an interest in the real property. In that circumstance, if a judgment was thereafter rendered in Plaintiff's favor, Plaintiff would gain a superior claim to the real property, relating back to the filing of the Lis Pendens, that would trump any interest of the Trustee. But where, as here, the Lis Pendens was not validly recorded, even if Plaintiff were to prevail on her claims, her interest in the real property would not relate back to the filing of the Lis Pendens."

Secured Status Order at 3 (emphasis added).

With respect to any lien claim asserted by Plaintiff, this Court has

> ruled in a separate memorandum being issued concurrently that Plaintiff's Lis Pendens is void and invalid against the Trustee and that Plaintiff's $134,359.13 claim is unsecured. Although the Sale Order reserved issues with respect to the interests of Plaintiff and Defendant Mahdi Radwan in the proceeds of sale, ***the Court's ruling regarding Plaintiff's claim essentially moots Plaintiff's claims regarding ownership and lien interests in the Property***.

Dismissal Order at 2-3 (emphasis added).

This Court agreed:

> Love first identifies issues that the Bankruptcy Court "never considered." These issues are ***whether the Lighthouse Ave. property was property of the alleged partnership***; that the partnership did not file for bankruptcy; the state court judgment against Javea; and Love's security interest via a written and oral agreement with "Wiseman et al.". These issues were not relevant to the motions presented to the Bankruptcy Court, and they remain irrelevant on appeal. ***Love did not assert any of these arguments as a basis for the secured status of her claim. The only basis she asserted in her proof of claim was "Recorded lis pendens."***

Prior Order at 13-14 (emphasis added, internal citations to the record omitted); *see also* Proof of Claim, Trial Exh. 11, ECF 12-1 at 159. Love has failed to provide any reason that would justify revisiting the Court's Prior Order.

Furthermore, the Trustee was not "on notice" of Love's interest in the Monterey Property (Love's issue statement no. 2). *See* Opening Br. at 12 ("As of May 2015, the Trustee was 'on notice' of the March 2014 state court judgment against general co-partner Javea for $134,359.13 in favor of general co-partner Love [TE 10 and 11]; and the 20 12 *lis pendens* [TE 11, pgs. 5-7]"). The Bankruptcy Court correctly addressed Love's argument on Trustee's actual notice of the lis pendens:

> What Plaintiff apparently does not grasp is that, once a chapter 7 case is filed, the trustee steps into the shoes of a third party. Pursuant to § 544(a)(1) the trustee has, as of the commencement of the bankruptcy case, without regard to any knowledge of the trustee or of any creditor, the rights and powers of a hypothetical lien creditor. Additionally, pursuant to § 544(a)(3), upon the commencement of the bankruptcy case, without regard to any knowledge of the trustee or creditor, the trustee has the rights and powers of a hypothetical bona fide purchaser. Section 544(a)(3) grants the trustee the power of a hypothetical bona fide purchaser to set aside a lien. In re Kim, 161 B.R. 831, 26 834 (9th Cir. BAP 1993). The trustee's actual notice is irrelevant. In re Professional Investment Properties of America, 955 F.2d 623, 627 n.2 (9th Cir. 1992).
>
> As such, actual knowledge by the Debtors and the Trust of Plaintiff's Lis Pendens is also irrelevant. As a hypothetical lien creditor and a hypothetical bona fide purchaser, the Trustee stands in the shoes of a

13

> third party, who is entitled to rely on the public record to determine whether Plaintiff's Lis Pendens is valid. Here, Plaintiff admittedly failed to comply with the recording provisions of Cal. Civ. Proc. Code § 405.23. Therefore, the Court's finding that the Lis Pendens is void and invalid as against the Trustee is final.

Secured Status Order at 5-6. The Trustee's actual knowledge of Love's lis pendens does not bestow upon Love any rights to the Monterey Property.

Neither did Love's invalid lis pendens provide constructive notice of her interest in the Monterey Property. As the Court explained above, the Bankruptcy Court's analysis was correct: the lis pendens, had it been validly recorded, would have provided notice to the world—including the in the role of a hypothetical bona fide purchaser—that Love asserted an interest in the real property. But because the lis pendens was invalid, such constructive notice did not take place. In sum, as the Court concluded in its prior affirmance of the Bankruptcy Court's findings, Love's invalid lis pendens did not provide notice (actual or constructive) of Love's alleged interest in the Monterey Property.

Finally, the Court addresses Love's seemingly new argument in her Reply brief. It appears that Love understands that conveyance of real property under California law must be in writing[2], because she argues that "the Trust's verified (i.e. signed) answer and discovery responses in the state court litigation which satisfied the 'writing' requirement of the statute of frauds[.]" Reply at 13. Love's theory is this: in the state court litigation, defendants (the Wisemans, Javea, and importantly Family Trust) collectively responded to Love's special interrogatories that they received $100,000 from Love. Love takes this to mean that Family Trust (the undisputed owner of the Monterey Property prior to the Wisemans' bankruptcy) acknowledged the May 2012 agreement to sell Love the Monterey Property (because why else would Love agree to pay $25,000 more than the written agreement provides? And why else would the total purchase price increase from $225,000 to $500,000) – and therefore, these discovery responses satisfy the statute of frauds. *See* Reply at 14.

---

[2] *See Martin v. Wells Fargo Bank, N.A.*, No. 5:18-CV-05119-EJD, 2020 WL 127680, at *4 (N.D. Cal. Jan. 10, 2020) ("California Civil Code § 1624(a)(3) provides that any agreement pertaining to 'the sale of real property, or of an interest therein' is invalid unless memorialized in writing and signed by the party to be charged.")

14

Love's convoluted characterization of the discovery responses has no support in the evidence. What the discovery responses actually contain is as follows:

> 4. If you contend that the funds received by you from LOVE were a personal loan to you, state every fact which supports your contention.

Trial Exh. 7, ECF 12-1 at 138-41.

> Responding Party: John Wiseman, Vicki Wiseman, Javea Corp., The Wiseman Family Trust, 2002, Defendants
> …
> **Response 4.** This was a down payments and investment with the 1st installment being $100,000 as stated. The total amount payable for $500,000, leaving a balance due to Javea Corporation for its businesses Art Max, Searle Framing, Frames on Broadway & Max Wholesalers of $400,000. A meeting with a mutually agreed upon family attorney was held to issue stock certificates, of which, Love would have a 25% holding in Javea Corporation.

Trial Exh. 8 at 3, ECF 12-1 at 142-54. The discovery response made no mention of the Monterey Property.

Far from admitting that it sold any portion of the Monterey Property to Love, the Family Trust denied those allegations in the state court litigation:

> 14. Plaintiffs are informed and believe and thereon allege on or about March 1, 2012, Defendants and Plaintiffs agreed Plaintiffs would purchase the CORPORATION including the PROPERTY for $225,000 under the following terms: Plaintiffs would pay $75,000 on or about March 1, 2012; and then Plaintiffs would pay $150,000 on a date to be determined exclusively by Plaintiff LOVE, for a total price of $225,000 for the CORPORATION which included the ownership of the PROPERTY. The agreement was reduced to writing on or about March 1, 2012 and signed by Defendant JOHN WISEMAN when Plaintiff LOVE paid the $75,000 noted herein; a true and correct copy of that oral agreement is attached as Exhibit A. Thereafter, additional payments of about $25,000 were made by Plaintiff(s) to Defendants for the purchase of the CORPORATION.[3]

State Court Compl. ¶ 14, Trial Exh. 4, ECF 12-1 at 113-24.

> In answering paragraph 14, DEFENDANTS deny any agreement to purchase the corporation for $225,000, ***deny any agreement regarding the property***, deny that Exhibit A to the complaint is an agreement to purchase the corporation.

---

[3] The Court notes that it appears that Love's theory of her claims against the Wisemans has somewhat changed since the state court litigation. In her state court complaint, Love alleged that the Monterey Property was included in the March 2012 agreement (not the revised May 2012 agreement). *See* State Court Compl. ¶ 14.

15

Family Trust's State Court Answer ¶ 13, Trial Exh. 6, ECF 12-1 at 132-37 (emphasis added). The state court discovery responses do not support Love's claim that the Family Trust "sold" her (or the partnership) any portion of the Monterey Property.

\*\*\*

In sum, the Court affirms Bankruptcy Court's judgment that the bankruptcy estate was the owner of the Monterey Property.

### 2. Bankruptcy Court's Sale Order and Adequate Protection (Issues 3, 4, and 5)

On November 4, 2014, the Bankruptcy Court (with Love's stipulated approval) ordered that the Trustee was permitted to sell the Monterey Property free and clear of all liens. *See* Sale Order. In that order, the Bankruptcy Court noted that the "liens of Love and Mahdi Radwan shall attach to the net sales proceeds of the Monterey Property pending the resolution of litigation to determine the right, title and interest of the bankruptcy estate, Love and Mahdi Radwan in the net sale proceeds of the Monterey Property." *Id.* ¶ 14. The Bankruptcy Court ordered the Trustee to hold the net sales proceeds from the Monterey Property in trust pending the outcome of the litigation against Love and Mahdi Radwan." *Id.* ¶ 15.

Love argues that by noting Love's lien on the proceeds of the sale, the Bankruptcy Court "conceded" that Love was not an unsecured creditor. Opening Br. at 8. Love's argument is contrary to the Sale Order's clear language and must be rejected. The Bankruptcy Court did not concede anything – it simply ordered the Trustee to hold the proceeds of the sale pending the outcome of the litigation involving Love (and Radwan).

Next, relying on the Sale Order, Love argues that the Trustee was obligated to distribute the proceeds of the Monterey Property's sale to her based on "California Partnership Law" and "Adequate Protection." *See* Opening Br. 7, 9, 12, 22. Again, there is no basis for Love's assertions. The Trustee was ordered to hold the sales proceeds pending the outcome of Love's claims – and once it was determined that Love was *not* a secured creditor, the Trustee had no specific obligation to distribute funds to Love.

Similarly, Love's arguments regarding "adequate protection" are misplaced because she was found to be an unsecured creditor and as an unsecured creditor, she was not entitled to adequate

16

protection. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983) ("The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection[.]"); *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 90 (2d Cir. 2003) ("The adequate protection provision of 11 U.S.C. § 361 protects only secured creditors.").

\*\*\*

In sum, Bankruptcy Court's Sale Order did not grant Love secured creditor status.

### D. Second Reconsideration Order

#### 1. Full Faith and Credit to State Court's Rulings

Throughout her Opening and Reply briefs, Love repeatedly argues that the Bankruptcy Court failed to give "full faith and credit" to the state court's rulings. In addition, Love has filed a Request for "Full Faith and Credit" of State Court Rulings. ECF 24. Love makes two arguments: (1) because the state court denied a motion to expunge Love's lis pendens, the Bankruptcy Court erred in finding the lis pendens invalid and (2) Bankruptcy Court failed to give "full faith and credit" to state court's 2014 Judgment against Javea. *Id.* at 2-3.

As for the state court's order denying expungement of Love's lis pendens, this Court considered and rejected the same arguments when it affirmed the Bankruptcy Court's decision in its Prior Order:

> [T]he Bankruptcy Court did not abuse its discretion either by failing to give full faith and credit to the 2013 state court order denying the Wisemans' motion to expunge the lis pendens or by considering Love's failure to record proof of service of the lis pendens. The Bankruptcy Court considered the order denying expungement and noted that when the state court denied the motion for expungement, the issue of recordation of service of the lis pendens was not before that court. See Tentative Dec. at 5, ECF 3-23. The Bankruptcy Court also did not abuse its discretion by upholding Cal. Civ. Proc. Code § 405.23's requirement that proof of service of a lis pendens be recorded "with the notice of pendency of action."

Prior Order at 10. Again, Love has failed to present any reason for this Court to reconsider and disturb its prior affirmance.

Similarly, as for the state court's 2014 judgment against Javea, this Court affirmed Bankruptcy Court's decision regarding Love's claims against the Trustee:

> Love's fourth set of arguments is that she is entitled to full faith and

17

> credit for the state court judgment of $134,359.13…. The Bankruptcy
> Court has not denied the state court judgment; it merely has held that
> the claim in the amount of the judgment is unsecured.

Prior Order at 14. Again, Love has not presented a reason for this Court to reconsider the law of the case.

Regarding Love's claims against the Wisemans, the Bankruptcy Court correctly responded to Love's argument in its Second Reconsideration Order:

> Plaintiff argues the court did not give full faith and credit to the 2014 state court Judgment against Javea in the Amended Order Following Trial. That is not correct. The state court judgment established that Javea Corporation was liable on a debt to Plaintiff. Plaintiff's §523 actions sought a determination that Defendants' obligation to her was non-dischargeable. The dischargeability of a particular debt under § 523(a) is not the same as whether a particular person owes a debt. Defendants are individuals and not Javea Corporation. The state court's conclusion that Javea Corporation was liable for a debt has no bearing on whether that same debt is dischargeable or not in this proceeding, which only involves the individual debtor defendants and not Javea Corporation. Thus, there are no grounds upon which to grant the requested relief.

Second Recons. Order at 5. Again, the Bankruptcy Court did not "ignore" the state court's 2014 judgment against Javea – it simply found that that Love has a general unsecured claim in the amount of $134,359.13 that is not nondischargeable.

\*\*\*

In sum, Bankruptcy Court did not err by failing to give full faith and credit to the state court rulings.

### 2. This Court's Prior Order

In its Second Reconsideration Order, the Bankruptcy Court declined to revisit many of Love's arguments (*i.e.*, Love's claims that the Bankruptcy Court erred in (1) not awarding Love a partial interest in the Monterey Property, (2) not granting Love partial ownership of the Monterey Property under California partnership law, (3) omitting the Sale Order, which Love believes granted her adequate protection, and (4) failing to address her claim of a secured interest in the Monterey Property). Second Recons. Order at 5-7. The Bankruptcy Court did so because Love's contentions were addressed in the Bankruptcy Court's interlocutory decisions and affirmed by this Court's Prior Order. *Id.* The Bankruptcy Court noted that it "cannot reconsider an order that has already been

18

affirmed on appeal by the District Court." *Id.*

Love argues that the Bankruptcy Court committed "clear error" because "given the laws applicable to appeals, nothing is yet final." Opening Br. at 28. In Love's view "no completed 'final' appeal ever occurred" because the Ninth Circuit dismissed Love's appeal for lack of jurisdiction to review interlocutory orders. *Id.*; *see also* Ninth Circuit Dismissal.

The Trustee responds that Bankruptcy Court was "precluded from modifying this Court's Prior Appellate Order, by the Rule of Mandate, and correctly refrained from doing so." Answering Br. at 17. The Trustee is correct on the law. The rule of mandate doctrine prohibits a lower court (in this case, the Bankruptcy Court) to take any action that contradicts the mandate of an appellate court (in this case, this Court). *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). Here, this Court, in its capacity as an appellate court, considered and affirmed Bankruptcy Court's interlocutory orders. *See generally* Prior Order; 28 U.S.C. § 158(a). Once affirmed by this Court, the rule of mandate doctrine prohibited the Bankruptcy Court to take action contrary to this Court's Prior Order. The fact that the Ninth Circuit dismissed Love's appeal for lack of jurisdiction is irrelevant. *See In re City of Desert Hot Springs*, 339 F.3d 782, 787 (9th Cir. 2003) ("The courts of appeals do not have jurisdiction to hear interlocutory appeals in bankruptcy cases."). The Ninth Circuit did not issue any mandate regarding the substance of Love's claims – it simply declined to hear her appeal.

\*\*\*

In sum, the Bankruptcy Court did not err by declining to revisit the issues affirmed by this Court's Prior Order.

## IV. ORDER

The orders and judgment of the Bankruptcy Court are AFFIRMED.

**IT IS SO ORDERED.**

Dated: March 3, 2020

BETH LABSON FREEMAN
United States District Judge